OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendants Lutheran Medical Center (Lutheran) and LMC Physician Services, EC. (Physician Services) move for an order *576 pursuant to CPLR 3211 (a) (7) dismissing the complaint in its entirety and for such other and further relief as this court deems just and proper.
Background
This action arises out of the allegedly unjustified termination of plaintiff, Dr. Irina Kiblitsky, a licensed psychiatrist who entered into an employment agreement with Physician Services on or about December 7, 2007, effective in February 2008. After the expiration of her first agreement, she entered into a second employment agreement (the Agreement) on or about September 1, 2009. Section 14 (b) of the Agreement provided that “[ejither party may terminate this Agreement at any time without cause on sixty (60) days notice to the other party” (exhibit 1 to complaint).
According to the complaint, on April 19, 2010, a new patient, “WH,” who had a history of drug abuse, was voluntarily admitted to Lutheran by another psychiatrist and assigned to the care of Dr. Kiblitsky, who treated and discharged WH from Lutheran on Monday, April 26, 2010, around the same time that Dr. Kiblitsky began a planned vacation to prepare for her board certification. Upon returning to work on May 13, 2010, plaintiff met with Dr. Bradford Goff, the chairman of the Department of Psychiatry at Lutheran, who informed her that WH had been found dead on the street and had possibly committed suicide. According to the complaint, however, a police investigation determined that WH had actually died on the premises of Columbia-Presbyterian Medical Center, and the medical examiner had concluded that WH’s cause of death had been accidental due to drug use. Also at the May 13 meeting, Dr. Goff handed Dr. Kiblitsky a letter, signed by him, stating:
“This letter is to inform you that that [sic] your employment contract with [Physician Services] . . . is being terminated effective today. In accordance with Section 14 (b) of the Employment Contract, you are being paid 60 days’ salary with benefits in lieu of notice. As such, you will continue to receive salary and benefits through July 13, 2010. Under the terms of the Employment Contract, your Lutheran Medical Center medical staff membership and privileges will automatically terminate concurrently with your separation from employment.
*577 “As we discussed, this decision is based on your professional conduct and judgment in the case of patient WH. Also taken into account were the prior performance issues that have been discussed with you and for which you have received supervision. Since your termination is based on your professional conduct, it is required to be reported to the Office of Professional Medical Conduct” (exhibit 2 to complaint).
The complaint alleges that on June 7, 2010, defendants reported plaintiffs termination for cause to the New York State Office of Professional Medical Conduct (the OPMC), a New York State regulatory authority, without affording her the procedural protections provided under Lutheran’s bylaws.
Plaintiff commenced this action by filing a summons and complaint on or about September 8, 2010, claiming she continued to be employed by Physician Services and to provide services at Lutheran until July 13, 2010 and should have been entitled to all of the protections provided by Lutheran’s constitution and bylaws, including the right “to defend her conduct and medical judgment before a body of her peers” (complaint 1i 32). The complaint asserts four causes of action against defendants Physician Services and Lutheran seeking damages for breach of contract, defamation per se and compelled self-defamation, and a judgment annulling the defendants’ determination as arbitrary and capricious, pursuant to CPLR article 78, and requesting a name-clearing hearing. On or about November 19, 2010, defendants moved to dismiss the complaint for failure to state a cause of action. On March 9, 2011, at oral argument, this court denied defendants’ motion with respect to the first, second and fourth causes of action, finding that discovery was needed to address multiple questions of fact raised relating to, inter alia, the relationship between Lutheran and Physician Services and the process by which a report is made to OPMC. This court reserved decision on the limited issue of whether the plaintiff had adequately stated a third cause of action for “compelled self-defamation,” which is addressed herein.
Analysis
Under CPLR 3211 (a) (7), dismissal is warranted if the pleading fails to state a cause of action. The court must accept the facts alleged by the plaintiff as true and must liberally construe the complaint, according it the benefit of every possible favorable inference (Campaign for Fiscal Equity v State of New York, *578 86 NY2d 307, 318 [1995]; see also Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]). Ultimately, the role of the court is to “determine only whether the facts as alleged fit within any cognizable legal theory” (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). “[T]he standard is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action” (Sokol v Leader, 74 AD3d 1180, 1180-1181 [2d Dept 2010]).
In her third cause of action for compelled self-defamation, plaintiff claims that she “has a duty to mitigate her damages a result of her termination” and
“has applied for employment in the field of psychiatry and will continue to apply . . . but at the time of interview or on job applications she has been required, and will be required, to explain the circumstances of her termination and also of Defendants’ reporting of the purported circumstances of her termination to the OPMC” (complaint 1111 62-63).
Plaintiff further alleges that
“[i]n doing so, she has been compelled and will be compelled, to publish the false and defamatory statements made by Defendants with regard to the fact that she had been purportedly terminated for ‘cause’ pursuant to 14 (c) of the Agreement and for ‘professional conduct and judgment in the care of [a patient]’ and to otherwise publish the charges made against her to the OPMC” (complaint 1i 64).[1]
Plaintiffs affirmation states that since the date of the complaint, plaintiff has been “compelled to republish the false and defamatory statements made by Defendants with respect to [her] ‘professional conduct and judgment’ in the care of a patient to the New York State Board of Education in applying for renewal of [her] State medical license” (plaintiffs affirmation in opposition), *579 [2] but admits that her license was renewed. Plaintiff also states that she has “been informed by at least one potential employer that [she] has been declined employment on this basis” {id.).
Defendants contend that New York does not recognize a cause of action for compelled self-defamation because such a theory would be impractical as every dismissed employee may possess a potential claim for compelled self-defamation. Defendants contend, in the alternative, that even if this court does recognize the tort, plaintiff has failed to adequately plead the elements of compelled self-defamation and to comply with the heightened pleading requirements of CPLR 3016. Defendants also contend that plaintiff did not suffer damages as she successfully renewed her license even after revealing the terms of her termination to the New York State Board of Regents.
The Appellate Division, First Department has expressly held that New York does not recognize a cause of action for compelled self-defamation, or “compelled self-publication,” defined as permitting
“a discharged employee [to] sue for defamation even if an employer made the defamatory statement to no one other than the employee if the employer knows, or should know, of circumstances where the employee is later put in a position in which he or she has no reasonable means of avoiding publication of the statement and must repeat such statement; usually when seeking new employment” (Wieder v Chemical Bank, 202 AD2d 168, 170 [1st Dept 1994]; see also 43A NY Jur 2d, Defamation and Privacy §93).
Citing Weintraub v Phillips, Nizer, Benjamin, Krim, & Ballon (172 AD2d 254, 255 [1st Dept 1991]), the Wieder Court stated, “this Court has previously rejected [the tort of defamation by compelled self-publication].” (202 AD2d at 170.) In Weintraub, the Appellate Division, First Department found that New York law does not “recognize a claim for defamation where the plaintiff himself voluntarily republishes the alleged defamatory words” (172 AD2d at 255), affirming the trial court which had specifically declined “to adopt the doctrine of self-publication and expand the law of defamation in New York” as
*580 “[t]he adoption of the doctrine of self-publication would encourage every employee who feels he or she was discharged for an unflattering reason to bring suit [thus] unduly burdening] the courts as well as creating] a huge potential for liability for employers who could do very little to prevent such suits” (Weintraub v Phillips, Nizer, Benjamin, Krim & Ballon, Sup Ct, NY County, Jan. 30, 1990, Moskowitz, J., index No. 26931/87, at 12).
Although the Appellate Division, Second Department, has not expressly rejected the tort of defamation by compelled self-publication, it has upheld the general rule that no defamation exists where the plaintiff himself was the only disseminator of the information that he had been fired (see Fedrizzi v Washingtonville Cent. School Dist., 204 AD2d 267 [2d Dept 1994]).
However, in Wright v Guarinello (165 Misc 2d 720 [Sup Ct, Kings County 1995]), in dicta, Kangs County Supreme Court Justice Kramer did recognize the merits of defamation by compelled self-publication as a valid cause of action in a situation similar to the facts at bar. Similar to plaintiff here who was terminated by a health care provider, Wright was terminated from employment by a not-for-profit social service agency for professional misconduct, including the infliction of physical and psychological abuse upon a patient with developmental disabilities, which was reported, as required by law, to state authorities. Like plaintiff, Wright challenged the veracity of the reported information and denied any misconduct. Judge Kramer found that, because the stated cause for Wright’s dismissal was of a stigmatizing nature, the charge had been disclosed to a state authority, and petitioner had demonstrated that the dismissal adversely affected his future employability because he was required to explain the cause on future job applications,[3] Wright was therefore entitled to a name-clearing hearing, pursuant to article 78 of the CPLR.
Federal courts have also recognized the merits of the doctrine of compelled self-defamation, predicting that “the New York Court of Appeals would hold that an action for defamation would lie where a plaintiff has no realistic alternative but to submit the defamatory material” (Van-Go Transp. Co., Inc. v New York City Bd. of Educ., 971 F Supp 90, 94 [ED NY 1997]; see also J. Crew Group, Inc. v Griffin, 1990 WL 193918, 1990 US Dist *581 LEXIS 15835 [SD NY 1990]; Weldy v Piedmont Airlines, 1989 WL 158342 [WD NY 1989], revd 985 F2d 57 [2d Cir 1993] [on the grounds that the District Court improperly dismissed the slander claim (the dismissed defamation claim was not appealed)]; Mandelblatt v Perelman, 683 F Supp 379 [SD NY 1988]; Elmore v Shell Oil Co., 733 F Supp 544 [ED NY 1988]; cf. Tischmann v ITT/Sheraton Corp., 882 F Supp 1358 [SD NY 1995]). Analyzing compelled self-publication as an exception to the general rule that publication of the libel by the defendant to a third party is a necessary element of liability for defamation, the Van-Go court would impose liability only “if the defendant knew or could have foreseen that the plaintiff would be compelled to repeat the defamatory statement” (971 F Supp at 102, quoting J. Crew Group, Inc., 1990 WL 193918 at *2, 1990 US Dist LEXIS 15835 at *6). Both Van-Go and J. Crew Group, Inc. adopted the reasoning of McKinney v County of Santa Clara (110 Cal App 3d 787, 797-798, 168 Cal Rptr 89, 94 [Ct App, 1st Dist 1980]):
“The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication. This causal link is no less strong where the foreseeable republication is made by the person defamed operating under a strong compulsion to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed.”
Despite the numerous thoughtful opinions advocating for recognition of a claim for self-compelled defamation, such cause of action has not, in fact, been recognized in this state in the more than 10 years since these decisions were issued. As the Appellate Division, First Department has unequivocally, albeit tersely, rejected the cause of action, this court is constrained by precedent to dismiss the claim, at least until the Appellate Division, Second Department, or the Court of Appeals rules otherwise on the matter (see Mohen v Stepanov, 59 AD3d 502, 504 [2d Dept 2009], citing Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984]).
Moreover, even if this court were to recognize compelled self-defamation as a valid cause of action, plaintiff has not adequately alleged all the requisite elements of her claim. CPLR 3016 (a) *582 requires that “[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally.” Plaintiffs compelled self-defamation claim consists of two separate claims. The first claim relates to compelled self-defamation to future employers and the second claim relates to compelled self-defamation to the New York State Board of Regents in the process of renewing her license. Plaintiff has failed to plead with sufficient particularity the first claim for self-compelled defamation by failing to provide the identities of the potential employers with whom she interviewed and to whom she was allegedly compelled to repeat the defamatory statements, as well as the time and location that such statements were made, thus requiring dismissal of that compelled self-defamation claim (see Gill v Pathmark Stores, 237 AD2d 563, 564 [2d Dept 1997]; Bell v Alden Owners, 299 AD2d 207, 208-209 [1st Dept 2002]).[4]
Plaintiff has, however, adequately stated a claim, pursuant to the pleading requirements of CPLR 3016 (a), with respect to her second claim of compelled self-defamation to the New York State Board of Regents, as she claims she was compelled to report her termination on certain forms in order to renew her state medical license (see Jacobs v Haber, 133 AD2d 739 [2d Dept 1987] [in which the court considered, in its determination of a CPLR 3211 (a) (7) motion, the complaint, the accompanying exhibits, and plaintiffs reply affidavit detailing the alleged defamation]; see also Sokol v Leader, 74 AD3d at 1183). Although plaintiff admits she received her license approximately three weeks later on November 15, 2010, damages are assumed when the defamation may injure her trade, business or profession (see Liberman v Gelstein, 80 NY2d 429, 435 [1992]).
Plaintiff’s third cause of action for “compelled self-defamation” is dismissed. The parties are directed to appear on June 8, 2011 for a preliminary conference.

. Paragraph 64 of the complaint does not include the phrase “the charges made against her to the OPMC” but rather ends mid-sentence. The plaintiff subsequently submitted an affidavit in opposition to the motion to dismiss in which she corrected the incomplete sentence. Amendments to the complaint should be made pursuant to CPLR 3025; however, given the statutory requirement that “[l]eave shall be freely given upon such terms as may be just” (CPLR 3025 [b]), and this court’s obligation to view the complaint in the light most favorable to the plaintiff in its determination of the motion, this court will accept the complaint as supplemented by plaintiffs affidavit.

. The complaint refers to the “New York State Board of Education” an entity which does not exist. For the purposes of this order, the court assumes that plaintiff intended to refer to the Board of Regents of the New York State Education Department, which oversees licensing requirements for professions.

. Wright had applied for a job with the United States Secret Service, which required disclosure of any firing within the last 10 years.

. It is noted that the letter to OPMC, though requested, was not revealed to the plaintiff. At oral argument, defendants suggested that the communication to OPMC was “confidential.” Such contention does not suffice to prevent plaintiff herself from knowing the contents of the alleged defamatory communication. It is noted that no claim of privilege has been asserted.